UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TAREK WALKER, on behalf of himself, individually, and on behalf of all others similarly situated,

Plaintiff,

-against-

OMAKASE SHOTA LLC, and CHENG LIN, individually,

Defendants.

**Dkt. No.: 25-cv-00708**

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff TAREK WALKER ("Walker"), on behalf of himself, individually, and on behalf of all others similarly situated ("Plaintiff," "FLSA Plaintiffs" or "Rule 23 Plaintiffs," where appropriate), by and through his attorneys, JOSEPH & NORINSBERG, LLC, as and for his Complaint against OMAKASE SHOTA LLC ("Omakase"), and CHENG LIN, individually ("Lin") (collectively, "Defendants"), alleges upon knowledge as to himself and upon information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff brings this action on behalf of himself, individually, and on behalf of all others similarly situated to recover damages for Defendants' egregious, systemic, and continuous violations of: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160 *et. seq*., and New York Comp. Codes R. & Regs ("NYCRR") Tit. 12, § 146-1.4; (iii) the NYLL's prohibition against employers engaging in unlawful wage theft by making unlawful deductions from employees' wages earned, violating NYLL § 193 *et. seq*., and 12 NYCRR § 146-2.7; (iv) the NYLL's tip pooling and/or tip sharing regulations as required by NYLL §§ 652, 198, 12 NYCRR § 146-1.6; (v) the NYLL's prohibition against employers operating in the Hospitality Industry, as

1

defined in 12 NYCRR § 146-3.1 , from paying employees on an untimely basis, and less frequently than a weekly basis in which the wages were earned, per NYLL § 191; (vi) one of the NYLL's anti-retaliation protections set forth in NYLL § 215; (vii) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3), as codified in the New York Wage Theft Prevention Act ("WTPA"); (viii) the NYLL's requirement that employers furnish employees with a wage notice at hire containing specific categories of accurate information, NYLL § 195(1); and (ix) any other claim(s) that can be inferred from the facts set forth herein.

2.      Defendants own and operate an upscale Omakase-style sushi restaurant that employs workers, laborers, and other personnel to work primarily at its principal place of business located at 50 South 3rd Street, Brooklyn, NY 11249.

3.      As outlined herein, from November 2023, until the retaliatory termination of his employment on July 24, 2024, Plaintiff regularly worked a schedule in excess of forty hours per week, yet Defendants paid Plaintiff a flat hourly wage for his first forty hours of work each week, with no additional compensation for any of his overtime hours worked each week, resulting in Plaintiff suffering unpaid overtime compensation in willful violation of both the FLSA, and the NYLL, as well as New York's Hospitality Industry Wage Order, 12 NYCRR § 146-1.4, *et. seq*.

4.      Plaintiff therefore brings this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself, individually, and on behalf of all other persons similarly situated during the applicable FLSA limitations period who suffered damages as a result of the Defendant's willful violations of the FLSA.

5.      Worse, Defendants operated under an unlawful policy and practice of routinely engaging in wage theft by withholding and unlawfully retaining portions of employees' weekly

wages earned, without any authorization or justification for doing so, and by violating NYLL's tip pooling and tip sharing regulations by permitting owners and exempt employees from participating in the tip pool money, despite the NYLL's clear prohibition against permitting them to do so.

6.      Making matters worse, Defendants violated the NYLL's frequency of pay provisions by paying employees on an untimely, bi-weekly basis, and less frequently than a weekly basis in which the wages were earned, in blatant and willful violation of N.Y.'s Hospitality Industry Wage Order for employers such as Defendants operating in the Hospitality Industry.

7.      As icing on the cake, and in direct response to Plaintiff's repeated complaints to Defendant Lin about the Defendants' egregious theft of his wages and his tips earned, Defendant Lin terminated Plaintiff's employment with Defendants shortly thereafter, abjectly violating the anti-retaliation protections afforded under NYLL § 215.

8.      Separately, Defendants failed to furnish Plaintiff with any accurate wage statements on each payday in violation of NYLL § 195(3), nor with any wage notice at hire containing specific statutorily-required categories of accurate information per NYLL § 195(1), both in violation of the WTPA, and New York's Hospitality Industry Wage Order, 12 NYCRR § 146-1.4, *et. seq.*

9.      Plaintiff therefore brings his NYLL claims pursuant to the class action provisions of Fed. R. Civ. P. 23(b)(3) on behalf of himself and all other similarly situated workers who worked for Defendants in New York.

## JURISDICTION AND VENUE

10.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

11.      The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

12.     Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

**PARTIES**

*Plaintiff*

13.     At all relevant times, Plaintiff worked for Defendants in New York and was an "employee" of the Defendants, entitled to the protections as defined in the FLSA, NYLL, and the NYCRR.

***Defendant Omakase***

14.     At all relevant times, Defendant Omakase was and is a restaurant which employs personnel at its principal place of business located at 50 South 3rd Street, Brooklyn, NY 11249.

15.     At all relevant times, Defendant Omakase is a domestic profit business corporation, operating in the food and hospitality industry, and engaged in the business of purchasing and selling food and related consumable products to both instate and out-of-state consumers alike.

16.     Defendant Omakase is an enterprise subject to NYLL's Hospitality Industry Wage Order because Defendant Omakase is an "eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service . . . ." 12 NYCRR § 146-3.1(b).

17.     At all relevant times, Defendant Omakase's qualifying annual gross business revenue exceeded $500,000.00, Defendant Omakase employs in excess of two or more people, and is engaged in interstate commerce within the meaning and the intent of the FLSA by ordering supplies from vendors that originated out of state and traveled across state lines in furtherance of its business operations such as food ingredients, condiments, and food-related materials, kitchen

tools, equipment, and machinery, and various other restaurant and kitchen-related products, all of which were moved, purchased and transacted through ordinary channels of instate commerce.

18.     Moreover, Defendant Omakase accepted credit card payments pursuant to agreements with in and out of state merchants alike, and accepted cash from customers which naturally moved across state lines. The combination of the foregoing subjects Defendant Omakase to the FLSA's requirements.

19.     At all relevant times, Defendant Omakase was and is an "employer" of Plaintiff within the meaning and the intent of the FLSA, NYLL, and the NYCRR.

### ***Defendant Lin***

20.     At all relevant times, Defendant Lin is the owner of Defendant Omakase, and is the day to day operator and manager of Defendant Omakase, who had and exercised exclusive power, authority, and discretion to set Defendant Omakase terms and conditions of employment for all workers, controlled all of its payroll policies, and implemented and enforced all workplace rules, including, without limitation, the unlawful practices complained of herein.

21.     At all relevant times herein, Defendant Lin has exercised exclusive and direct control over the terms and conditions of Plaintiff's employment, in that Defendant Lin had and exercised the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) pay workers their owed wages; (iv) determine work schedules; (v) supervise work and control of the employees, including the Plaintiff herein; and (vi) affect the quality of the employees' work conditions and employment.

22.     Defendant Lin hired Plaintiff to work at Defendant Omakase and ultimately terminated his employment there.

23.     At all relevant times, Defendant Lin provided instructions and directions to Plaintiff and Defendant Omakase's other employees on how and when to perform their job duties, and supervised the day-to-day work that Plaintiff performed there during each day.

24.     At all relevant times, Defendant Lin was the individual responsible for overseeing and controlling all of the daily operations of Defendant Omakase, actively participated in the day-to-day operations of Defendant Omakase, provided instructions and directions to Plaintiff and the enterprise's other employees on how and when to perform their job duties, and supervised the work that Plaintiff performed there each day.

25.     At all relevant times, Defendant Lin has had the exclusive power and authority over all final personnel and payroll decisions of Defendant Omakase, including all those relating to Plaintiff, and Defendant Omakase's other employees.

26.     At all relevant times, Defendant Lin set and established Plaintiff's rate of pay, and was responsible for paying Plaintiff his owed wages.

27.     At all relevant times herein, Defendant Lin was the individual responsible for disciplining or evaluating the work of Defendant Omakase's employees, including Plaintiff.

28.     At all relevant times herein, Defendant Lin was responsible for maintaining all employment records of Defendant Omakase, including, without limitation, any and all records relating to Plaintiff's hours worked and pay.

29.     Defendant Omakase regularly required Plaintiff and similarly situated employees to handle, sell, or work with packaged food and other goods for its business, all of which Defendants purchased and transported through the ordinary channels of interstate commerce.

30.     Moreover, Defendants required Plaintiff and similarly situated employees to perform work involving and related to the preparing, receiving, cooking and serving of food and

other consumable goods for Defendants' business, which were and are sold to in and out of state consumers alike, and which subjects the Defendants to the FLSA's overtime requirements for individuals.

31.    Accordingly, at all relevant times, Defendant Lin was and is the "employer" of Plaintiff within the meaning and the intent of the FLSA, the NYLL, and the NYCRR.

## **FACTUAL ALLEGATIONS**

32.    Defendants employed Plaintiff to perform work as a server and sommelier within Defendants' place of business from November 2023 through July 24, 2024.

33.    In his capacity as a server, Plaintiff's primary job duties tasked him with taking orders from customers, preparing dishes, and servicing customers' tables, while performing additional responsibilities as a sommelier including, among other things, inventory stocking, countering and ordering, conducting new product training to the other employees, designing the Company's menus, making changes to the Company's menus, changing the prices dependent on the season, teaching all employees how to use programs including how to sell, order, track and administer inventory, and overseeing the Company's beverage program which Plaintiff had implemented at the direction of Defendant Lin.

34.    Throughout Plaintiff's employment with Defendants, Defendants required Plaintiff to work, and indeed Plaintiff did regularly work, a schedule of five days per week, from Tuesday through Saturday - - and six days per week for approximately one week per month - - from approximately 2:00 pm or 3:00 p.m. until closing, which ranged anywhere from approximately 10:00 p.m. to 1:00 a.m., and on average, at 11:00 p.m.

35.    As a result, Plaintiff's regular workweek consisted of approximately forty-two to fifty, or more hours per week.

36.     In addition to his regular schedule above, however, during March 2024 through May 2024, when the Company was short-staffed with personnel, Defendant Lin regularly required Plaintiff to "cover extra shifts" and work even more hours each week, bringing his total average workweek to upwards of fifty-five or more hours per week.

37.     Despite his extensive hours worked, Defendants paid Plaintiff in a complicated and unlawful manner, without regard for the number of hours Plaintiff worked each day, or each week, vis-à-vis a combination of check and cash, and by a combination of an hourly rate of pay of $20.00 for his first forty hours worked per week, plus only a *portion* of the tips generated by his work.

38.     Defendants failed to pay Plaintiff any compensation for any of his hours of work beyond forty in a workweek.

39.     As such, although Plaintiff regularly worked for Defendants in excess of forty hours per week from November 2023 through July 24, 2024, Defendants did not pay Plaintiff at a wage rate of time and a half (1.5) his regular hourly rate of pay for his hours worked in excess of forty (40) in a work week, a blatant violation of the overtime provisions contained in the FLSA, NYLL, and NYCRR.

40.     Moreover, Defendants paid Plaintiff on a bi-weekly basis, or twice per month, violating the NYLL's prohibition against employers operating in the Hospitality Industry from paying employees on an untimely basis, and less frequently than a weekly basis in which the wages were earned, pursuant to NYLL § 191.

41.     Adding insult to injury, in addition to Defendants' failing to pay Plaintiff on a timely basis while failing to pay Plaintiff any compensation for any of his hours of work beyond forty in a workweek, worse, Defendants engaged in egregious wage theft each week, by operating under several distinct unlawful policies and practices, each of which resulted in Defendants

regularly making unlawful deductions from Plaintiff's regular wages, without any authority to do so and without justification, violating NYLL §§ 191, 195, and 12 NYCRR § 146-2.7.

*Defendants' Tip Pool Violations*

42.     Defendants egregiously violated the NYLL and NYCRR's hospitality industry wage order by its unlawful continuous practice of including owners and exempt employees to share in Defendants' tip pool, despite strict state regulations prohibiting owners and exempt employees from participating in a tip pool or receiving any portion of the hourly employees' tips. 12 NYCRR §§ 146-2.14 – 146-2.17.

43.     Specifically, Defendants' business generated a substantial sum of tip pool money, which, on average, ranged between $1,500.00 and $1,800.00 per week, equating to a total of approximately $3,000.00 - $3,600.00 during each biweekly pay period.

44.     Defendants then utilized an egregiously unlawful point-based system for calculating each tipped employee's tip portion, which violated state laws in several respects. First, while tipped employees received eight points each, Defendant Lin, the owner of the business, unlawfully retained ***ten points for himself***, despite the fact that Defendant Lin is the owner of the business, and is therefore not entitled to allocate any points to himself as a matter of law.

45.     In doing so, Defendants abjectly violated the NYCRR's prohibition against an owner or manager's inclusion in a tip pool within the hospitality industry.  12 NYCRR § 146-2.5. This also renders invalid any claim by Defendants to a "tip credit" per 12 NYCRR § 146-1.3.

46.     Second, state law requires that eligible employees who may share in a tip pool "must perform personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental," yet Defendants also unlawfully allocated several additional points to compensate their three salaried employees - - the chef, the prep cook, and the

dishwasher - - despite the fact that these three salaried employees did not work the floor, did not perform any tip-based duties, and thus were not entitled to share in the tip pool. 12 NYCRR § 146-2.14(e).

47.    These unlawful practices reduced the total amount of tip pool money available to tipped workers, including Plaintiff.

48.    Defendant Lin engaged in unlawful wage theft of the available tip pool money, by failing to pay Plaintiff, and the other tipped employees, their total money due and owing from Defendants' tip pool funds.

49.    By way of another illustrative example only, on one such workday when a customer had racked up a large bill for approximately $500.00, Defendant Lin directed Plaintiff to issue a discount for the customer. At the conclusion of the customer's meal, the customer took approximately $1,400.00 from his pocket, put the money in the checkbook, handed Defendant Lin the checkbook, and directed Defendant Lin to "take care of your workers." However, when the customer left, Defendant Lin immediately cancelled the customer's discount in order to increase the amount of the customer's bill, and merely added approximately $200.00 - $300.00 to the tip pool, rather than the approximately $900.00 in tips intended for the employees, thereby unlawfully pocketing the remainder.

50.    In doing so, yet again, Defendants knowingly and egregiously engaged in theft of tip monies that were intended for the tipped employees' tip pool.

51.    Plaintiff lodged numerous complaints to Defendant Lin about his misuse of the tip pool money, including informing Defendant Lin that, "you need to stop taking out our tips from the tip pool."

52.    However, in response to Plaintiff's such complaints, Defendant Lin would advise Plaintiff that, "I am the owner of this business, and I can do whatever I want," and that "this is the way it's going to continue to run, so this is the way it's going to be."

*Defendants' Wage Theft & Unlawful Deductions of Plaintiff's Wages*

53.    In addition to Defendants unlawful practice of stealing tip pool money, Defendants also engaged in rampant wage theft by making unlawful deductions from Plaintiff's biweekly wages, unlawfully undercutting Plaintiff's regular pay, and failing to pay Plaintiff for all his hours worked each week.

54.    By way of example only, during weeks when Plaintiff worked thirty-seven or more hours at a rate of $20.00 per hour, and based on his tip-related point allocation, earned a biweekly portion of tips of $3,000.00, his combined biweekly wages due equated to $3,740.00;  however, rather than paying Plaintiff his full wages owed, Defendant Lin instead paid Plaintiff merely $612.00 (or $500.00 after taxes) for his regular hours of work, leaving Plaintiff with a biweekly wage balance owed of $3,128.00, much of which comprised his owed tips, which Defendants failed and refused to pay Plaintiff in full. Instead, Defendant Lin only paid Plaintiff a fraction of his tips by cash in the amount of $1,000.00 or $1,200.00, depending on the week, and unlawfully kept the remainder of his tipped wages for himself.

55.    By way of another example only, during biweekly pay periods when Plaintiff earned $4,000.00 in combined regular wages and tips, Defendant Lin would pay Plaintiff approximately $600.00 to cover all hours worked during the two week pay period, leaving Plaintiff with a biweekly wage balance owed of $3,400.00, but rather than paying his wages in full, Defendant Lin only paid Plaintiff $1,800.00, or less, unlawfully keeping and retaining Plaintiff's remaining wages of $1,600.00 for himself. These are but two examples of the routine practice

at the Defendants' restaurant, amounting to flagrant wage theft in violation of the NYCRR and NYLL § 196-d.

56.     By way of another example only, during work weeks when Plaintiff worked approximately forty-two hours or more, Plaintiff's paycheck would ***only cover his wage for thirty-two hours***, shorting Plaintiff of approximately five hours per week, which he worked but for which he was not paid.

57.     While Defendants would, on some occasions, purport to record Plaintiff s working hours on their Toast App, the paystubs which Plaintiff infrequently received failed to record any figure for his 'hours' column to indicate the number of hours for which Defendants intended his pay to compensate him for., and thus, were invalid as a matter of law.

58.     As such, Plaintiff correctly believed that Defendants yet again, further undercut his wages, by failing to pay him for all hours he worked per week.

59.     For example, during weeks when Plaintiff's workweek consisted of approximately thirty-seven to forty-eight hours, Defendants paid Plaintiff for less hours than he worked each week, undercutting Plaintiff's paycheck by four to five hours, in violation of NYLL § 191 which requires the timely payment *in full for all hours worked* at an employee's agreed-upon rate of pay.

60.     By way of example only, during the pay period of May 13, 2024, through May 26, 2024, Plaintiff worked from 2:00 p.m. or 3:00 p.m. until 11:00 p.m. or 12:00 a.m., five days per week, and six days per week during one week of that pay period, for a total of approximately fifty hours per week.

61.     Yet Defendants only paid Plaintiff's gross wages for 35 hours of work for the pay period from May 13, 2024, through May 26, 2024, paying him a total $700.00 in gross wages for that biweekly pay period, and upon information and belief, some portion of tips totaling

approximately $1,000.00 for the pay period from May 13, 2024, through May 26, 2024, which amounts to a gross hourly wage rate of $8.75 per hour, or $21.25 per hour after Defendants' partial payment of Plaintiff's owed tips.

62.    As a result, Defendants failed to pay Plaintiff for approximately 15 hours worked each of the two weeks during that pay period, while also failing to pay Plaintiff all tips to which he was entitled, nor did Defendants pay Plaintiff overtime compensation for any of the ten overtime hours he worked each of those two weeks at a rate of one and one-half times his regular rate.

63.    Plaintiff frequently complained to Defendant Lin about Defendant Lin's theft of Plaintiff's wages, yet Defendant Lin refused to correct the issue, take any corrective or remedial measure, or cease Defendant's unlawful wage practices.

64.    Instead, in response to Plaintiff's wage complaints, Defendant Lin advised Plaintiff that, "I had to make cuts," and "I cut things like your break time."

65.    While Plaintiff explained to Defendant Lin that he did not consent to any cut to his hourly pay, Defendant Lin refused to rectify Plaintiff's routine wage underpayments.

66.    By way of another example only, Plaintiff specifically complained to Defendant Lin, among other things, that his "hours do not look accurate," that "you're underpaying my hours without my consent."

67.    In response, Defendant Lin falsely informed Plaintiff that the unpaid portions of his wages, "was a way to help you out, which I will keep as your savings for future equity."

68.    Defendant Lin repeatedly falsely informed Plaintiff that Defendant Lin did so because "we are opening a new restaurant" and "I want you to be there as the main guy," such that these unpaid portions of his wages which Defendant Lin unlawfully kept were "as an investment" and "for future equity for the project we're opening."

69.    Such statements and false promises to Plaintiff were untrue from the moment of Defendant Lin's utterance.

70.    Defendant Lin knowingly expressed these false accounts to Plaintiff in a deliberate effort to further conceal his repeated unlawful wage theft - and for Defendants' sole, ill benefit.

71.    Defendants' unjustified theft and retention of these wages from Plaintiff constituted wage theft, stolen wages, and specifically, the type of unlawful deductions from his wages as prohibited by the NYLL and WTPA. 12 NYCRR § 146-2.7.

72.    Despite Plaintiff's repeated complaints concerning these wage issues, rather than taking any corrective measure, Defendants continued their unlawful pay practices leaving Plaintiff with no choice other than to continue to voice his opposition to Defendants' unlawful wage theft while working for his unlawfully reduced pay.

73.    In direct response to Plaintiff's repeated complaints, Defendant Lin informed Plaintiff of the termination of his employment on July 24, 2024, without providing Plaintiff any renumeration of his past wages still owed to Plaintiff. Defendants' conduct, as outlined herein, and inclusive of the retaliatory termination of Plaintiff's employment as Defendants' response to Plaintiff's good faith wage complaints, abjectly violated NYLL § 215.

### *Defendants' Other Willful Violations of Law*

74.    In addition to engaging in rampant wage theft each week, Defendants knew that Plaintiff was performing significant overtime work, which legally required overtime pay, yet deliberately failed to provide Plaintiff with any overtime pay in their scheme to undercut Plaintiff's wages and maximize profits for Defendants' sole benefit and gain.

75.    Defendants' FLSA and NYLL violations described herein were deliberate and willful, as demonstrated by, *inter alia*, Defendants failing to keep accurate and contemporaneous

payroll records as required by the FLSA, the NYLL, and 12 NYCRR § 146-2.1, and willfully failing to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by the FLSA, NYLL, and 12 NYCRR § 146-2.4, in Defendants' attempt to conceal their unlawful conduct from Plaintiff and others similarly situated.

76.    In furtherance of their efforts to conceal their unlawful conduct from Plaintiff and others similarly situated, Defendants failed to provide Plaintiff, prior to the start of employment, with any written notice of Plaintiff's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday, in willful violation of the requirements of 12 NYCRR § 146-2.2.

77.    In furtherance of their efforts to conceal their unlawful conduct from Plaintiff and others similarly situated, on each occasion when Defendants paid Plaintiff, Defendants regularly paid Plaintiff in cash, while failing to provide Plaintiff with any accurate paystub, or other written document, let alone one that included, *inter alia*, his hours worked, and regular and overtime rate of pay for that pay period, in willful violation of the requirements of 12 NYCRR § 146-2.3.

78.    In furtherance of their efforts to conceal their unlawful conduct from Plaintiff and others similarly situated, Defendants failed to establish, maintain and preserve payroll records, which shall show for each employee, *inter alia*: regular and overtime hourly wage rates; the amount of gross wages; deductions from gross wages; the amount of net wages; and the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a spread of hours exceeding 10, in willful violation of the requirements of 12 NYCRR § 146-2.1.

79.     Plaintiff suffered a concrete injury in fact due to Defendants' failure to provide timely and accurate wage statements on each pay day because, and due to Defendants' failure to timely pay Plaintiff all wages due at least as frequently as a weekly basis, lacking any documentation from Defendants that showed his true hours and pay, Plaintiff was unable to meaningfully advocate for himself and others due to the lack of accurate information provided to him during each pay period from Defendants.

80.     If the Defendants had provided Plaintiff with paystubs accurately reflecting the actual hours he works and has worked and that he was entitled to be paid for all hours, Plaintiff would have been able to advocate for himself and for his coworkers to be paid higher wages during their employment, exactly as Plaintiff is now doing through this action upon independently learning of his rights.

81.     Indeed, because Plaintiff was not aware that he should have received, among other things, compensation at a rate of time and a half for his hours in excess of forty in a workweek, Plaintiff waited significant time before raising his complaints against Defendants, causing him to lose the time-value of the money he should have earned if he was accurately appraised of his total hours worked each week.

82.     What is more, by Defendants failing to timely pay Plaintiff all wages due on a weekly basis, Plaintiff was deprived of his ability to use and enjoy his money, hampered in his ability to purchase or invest his owed wages, and was underpaid by way of a late payment every other week, or every week in each week during which Defendants deducted hours or gratuities from his pay.

## COLLECTIVE ACTION ALLEGATIONS

83.     Plaintiff seeks to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on his own behalf, as well as on behalf of those in the following collective:

> Current and former non-managerial workers of Defendants, who during the applicable FLSA limitations period, performed work for Defendants and who consent to file a claim to recover damages for overtime compensation that is legally due to them; and/or liquidated damages that are legally due to them ("FLSA Plaintiffs").

84.     Defendants treated Plaintiff and all FLSA Plaintiffs similarly, in that Plaintiff and all FLSA Plaintiffs: (1) performed similar job duties and tasks, as described above; (2) were subject to the same laws and regulations; (3) were paid by Defendants in the same or similar manner; (4) were regularly required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay, for all hours worked per workweek in excess of forty.

85.     At all relevant times, Defendants have been aware of the requirements to pay Plaintiff and all FLSA Plaintiffs at the rate of one and one-half times their respective regular rate of pay for all hours worked each workweek above forty, yet purposefully and willfully chose and choose not to do so.

86.     Defendants' willful violations of the FLSA are evidenced by their knowledge that their policies violated the FLSA, and their intentional and/or reckless choice to continue to operate in violation of the FLSA's requirements. Further, discovery will reveal evidence that Defendants blatantly ignored the FLSA's explicit requirement that employees must be paid for *all* hours suffered or permitted to be worked and that underpaying its workers is an illegal practice.

87.     The precise number of FLSA Plaintiffs should be readily available from a review of the Defendants' personnel, scheduling, time, and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

88.     Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

89.     In addition, Plaintiff seeks to maintain this action as a class action pursuant to FRCP 23(b)(3), individually, on his own behalf, as well as on behalf of those who are similarly situated who, during the applicable limitations period, were subjected to violations of the NYLL and the NYCRR.

90.     Plaintiff seeks certification of the following FRCP 23 class:

> Current and former non-managerial workers who performed any work for any of the Defendants in New York during the statutory period within ("Rule 23 Plaintiffs").

91.     All of the requirements under FRCP(b)(3) are satisfied, as set forth below.

92.     Moreover, Plaintiff and the Rule 23 Plaintiffs have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. For instance, Plaintiff and the Rule 23 Plaintiffs have suffered a concrete injury in fact and as a result have been actually harmed by Defendants' nonpayment of any proper minimum wages or overtime wages. Specifically, Plaintiff and the Rule 23 Plaintiffs were deprived of their ability to purchase by Defendants' nonpayment of any proper minimum wages or overtime wages, invest said wages, accrue interest on their wages, or otherwise utilize the value that their wages would have held had they been properly paid to Plaintiffs.

## Numerosity & Ascertainability

93.    During the applicable NYLL limitations period, the Defendants have, in total, employed at least 40 other employees that are putative members of this class.

94.    The precise number of the Rule 23 Plaintiffs is readily ascertainable through a review of Defendants' personnel, time, and payroll records.

## Common Questions of Law and/or Fact

95.    There are questions of law and fact common to each Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that the Defendants required and require each Rule 23 Plaintiff to perform; (2) the manner of compensating each Rule 23 Plaintiff, including whether their rates of pay fell below the New York minimum wage rate; (3) whether the Defendants compensated all overtime wages due to Rule 23 Plaintiffs; (4) whether the Defendants furnished and furnish Rule 23 Plaintiffs with accurate wage statements on each payday containing the information required by N.Y. Lab. Law § 195(3); (5) whether the Defendants have kept and maintained accurate records of hours worked by Rule 23 Plaintiffs; (6) whether the Defendants kept and maintained records with respect to the compensation that it paid to the Rule 23 Plaintiffs for each hour worked; (7) whether the Defendants has any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (8) whether the Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and WTPA; and (9) if so, what constitutes the proper measure of damages.

## Typicality of Claims and/or Defenses

96.    As described herein, the Defendants employ(ed) Plaintiff and Rule 23 Plaintiffs within the meaning of the NYLL. The Plaintiff's claims are typical of the claims of the Rule 23 Plaintiffs whom he seeks to represent, as the Rule 23 Plaintiffs: work and/or have worked for

Defendants in New York; Defendants failed to pay them properly for all regular and overtime hours worked; and Defendants did not provide them with accurate wage statements on each pay day as required by applicable law. Plaintiff and the Rule 23 Plaintiffs enjoy all of the same statutory rights under the NYLL, inclusive of the requirements to be paid at or above the minimum wage, for all wages, tips, and overtime compensation due, and to be furnished with accurate wage notices upon hire and wage statements on each payday.

97.     Plaintiff and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of the Defendants' failure to comply with the NYLL and WTPA. Plaintiff and the Rule 23 Plaintiffs all have suffered injury including lack of compensation and/or untimely compensation due to the Defendants' common policies, practices, and patterns of conduct. Thus, Plaintiff's claims and/or Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and the Defendants' defenses to those claims.

### Adequacy

98.     Plaintiff, as described herein, worked the same or similar job duties as Rule 23 Plaintiffs throughout their employment with Defendants. Defendants did not pay Plaintiff at least at the minimum wage rate, nor for all overtime hours due, nor did Defendants furnish Plaintiff with accurate wage statements on each payday, which is substantially similar to how Defendants paid and treated the Rule 23 Plaintiffs.

99.     Plaintiff fully anticipates providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendants' Answer. Thus, Plaintiff would properly and adequately represent the current and former employees whom Defendants have also subjected to the treatment alleged herein.

100.    Additionally, Plaintiff's counsel, Joseph & Norinsberg, LLC ("J&N"), has substantial experience in the field of employment law.  J&N is a well-respected litigation firm that represents Plaintiffs primarily in a wide variety of employment matters, including individual and class action litigation concerning wage and hour, discrimination, and harassment claims among others. J&N is dedicated to its clients, working tirelessly to achieve the best outcome for them, sometimes at a significant cost to the firm in terms of time, resources, and financial risk. Plaintiffs' counsel has handled hundreds of employment cases in federal districts courts, including dozens of Rule 23 class actions and FLSA collective actions.  Accordingly, Plaintiff's counsel will fairly and adequately represent the interests of the putative class and will take all steps necessary to obtain class certification and appointment as class counsel.

### Superiority

101.    A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of evidence, effort, and expense that numerous individual actions would engender. This action will result in the orderly and expeditious administration of Class claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

102.    Plaintiff has no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class.  Indeed, at all relevant times herein, the Defendants treated Plaintiff identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

103.    Any lawsuit brought by a worker based in New York and employed by Defendants would be identical to a suit brought by any other such employee for the same violations.  Thus, separate litigation would risk inconsistent results.

104.    Accordingly, this means of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

105.    Each hour that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs worked was for the Defendants' benefit.

106.    Defendants acted in the manner described herein so as to minimize its overhead while maximizing profits.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unpaid Overtime under the FLSA*

107.    Plaintiff and FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

108.    Plaintiff has consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) *et seq*.

109.    29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

110.    As described above, each Defendant is an "employer" within the meaning of the FLSA, while Plaintiff and FLSA Plaintiffs are "employees" within the meaning of the FLSA.

111.    Plaintiff and FLSA Plaintiffs worked in excess of forty hours per week, yet the Defendants failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

112.    The Defendants' violations of the FLSA as described in this Complaint have been willful and intentional, demonstrated by their failure to post notice of the FLSA's requirements, to maintain accurate contemporaneous time records, and to accurate advise Plaintiff of his rights to be paid. Defendants have not made any good faith effort to comply with their obligations under the FLSA with respect to the compensation of Plaintiff nor FLSA Plaintiffs.

113.    Plaintiff and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rate of pay.

114.    Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the NYLL and the NYCCRR*

115.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

116.    N.Y. Lab. Law § 160 and 12 NYCRR § 146-1.4 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

117.    Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are "employees" within the meaning of the NYLL and the NYCRR.

118.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action worked in excess of forty hours in a workweek, yet Defendants failed to compensate him/them in accordance with the NYLL's and the NYCRR's overtime provisions.

119.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his/their regular rate of pay.

120.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the NYLL's and NYCRR's overtime provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unlawful Deductions from Wages in Violation of the NYLL and the NYCRR*

121.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

122.    Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are "employees" within the meaning of the NYLL and the NYCRR.

123.    N.Y. Lab. Law § 193 and 12 NYCCRR § 146-2.7 prohibit any employer from making any deduction from the wages of an employee, provided for few nonapplicable exceptions.

124.    As also described above, during each week that Plaintiff worked for Defendants, Defendants unlawfully retained, stole, and withheld, hundreds of dollars, or more, from each of Plaintiff's biweekly paychecks – without any authorization nor justification to do so – amounting to blatant wage theft, stolen wages, and specifically, the type of unlawful deductions from wages prohibited by the NYLL, WTPA, and 12 NYCRR § 146-2.7.

125.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs who opt-in to this action are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' unlawful deductions.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unlawful Retention of Tips And Gratuities in Violation of the NYLL and the NYCRR*

126.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

127.    Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are "employees" within the meaning of the NYLL and the NYCRR.

128.    At all times relevant, Defendants operated an (albeit unlawful) tip pooling practice as that term is defined within 12 NYCRR § 146-2.14.

129.    As relevant to the Plaintiff, pursuant to 12 NYCRR § 146-2.14(e), "[e]ligibility of employees to receive shared tips, or to receive distributions from a tip pool, shall be based upon duties," and "[e]ligible employees must perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental. Examples of eligible occupations include: (1) wait staff; (2) counter personnel who serve food or beverages to customers; (3) bus persons; (4) bartenders; (5) service bartenders; (6) barbacks; (7) food runners; (8) captains who provide direct food service to customers; and (9) hosts who greet and seat guests."

130.    As described above, Defendants violated 12 NYCRR § 146-2.16(b), which mandates that, "only food service workers may receive distributions from the tip pool."

131.    Further, Defendants violated 12 NYCRR § 146-2.17(a), which mandates that "employers who operate a tip sharing or tip pooling system must establish, maintain, and preserve for at least six years records which include:  (1) A daily log of the tips collected by each employee on each shift, whether in cash or by credit card;  (2) A list of occupations that the employer deems

eligible to receive tips through a tip sharing or tip pool system; (3) The shares of tips that each occupation is scheduled to receive from tip sharing or tip pooling; and (4) The amount in tips that each employee receives from the tip share or tip pool, by date," and Defendants violated § 146-2.17(b), which mandates that, "such records must be regularly made available for participants in the tip sharing or tip pooling systems to review."

132.    Furthermore, Defendants violated the provisions of 12 NYCRR §146-2.18, which provides, among other things, that "[s]ection 196-d of the New York State Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity."

133.    As also described above, during each week that Plaintiff worked for Defendants, Defendants engaged in theft of tip pool monies owed exclusively to employees performing tipped duties, like Plaintiff, by permitting owners and managers to unlawfully share, join, and partake in the tip pool monies, unlawfully paying salaried employees' wages out of the tip pool monies, and engaging in other unlawfully acts of blatant theft of tip pool monies.

134.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs who opt-in to this action are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' unlawful deductions.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Violation of the Frequency of Pay Regulations the NYLL and the NYCRR*

135.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

136.    Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are "employees" within the meaning of the NYLL and the NYCRR.

137.    Section 191 of the NYLL, which regulates how frequently an employee must be paid, mandates that "manual workers" must be paid on a weekly basis, and specifically, that all wages must be paid "not later than seven calendar days after the end of the week in which the wages are earned."

138.    Defendants violated state Frequency of Pay regulations by paying Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action on a biweekly basis.

139.    Further, as a sommelier, Plaintiff's job duties consisted of performing not only all the tasks of a server, including hurrying from table to table, taking orders, serving dishes, typing seating on the computer, contacting guests, and running the floor, but also, Plaintiff was responsible for inventory stocking, countering and ordering, conducting new product training to other employees, selling, ordering, tracking, and administering inventory, teaching all other employees how to perform these tasks as needed, among other things. During a typical workday, Plaintiff was constantly running around the restaurant premises, and was required to diligently and tirelessly with a 'hands on everything' approach to his job.

140.    Plaintiff's job duties place him squarely within the NYLL's category of manual workers who must be paid on a weekly basis insofar as Plaintiff spent more than 25% of his total working time engaged in "physical" duties - - a term which is interpreted broadly to include countless physical tasks performed by employees - - are covered by the NYLL's frequency of pay requirement and must be paid on a weekly basis.

141. Plaintiff was not required to accept Defendants' payment of his regular wages at periods other than those provided in NYLL Section 191, namely, on a weekly basis, and as such, by failing to pay Plaintiff on a weekly basis, Defendants abjectly violated NYLL Section 191.

142. Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs who opt-in to this action are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' egregiously untimely payment of all wages owed.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Violations of the Anti-Retaliation Provisions under the NYLL § 215(1)*

143. Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

144. New York Labor Law § 215(1) provides that "No employer . . . shall discharge, threaten, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer . . . that the employer has violated any provision of this chapter [the Labor Law]."

145. As set forth above, Defendants retaliated against Plaintiff for engaging in protected activity. Specifically, Plaintiff frequently complained about Defendants' wage violations, as alleged herein, and in direct response to Plaintiff complaining of Defendants' wage violations, Defendants retaliated against Plaintiff by, among other things, continuing to engage in rampant and worsening wage theft and terminating Plaintiff's employment without justification, and in direct response thereto.

146. These actions, among others, were in direct response to Plaintiff raising informal complaints against Defendants for their failure to pay him the premium rates for overtime hours he worked in violation of NYLL § 215.

147.    The temporal proximity between Plaintiff's complaints and Defendants' aggressive or retaliatory behaviors gives rise to an inference of retaliation.

148.    As a direct and proximate result of Defendants' conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, physical and emotional pain and suffering and loss of earnings for which he is entitled to an award of monetary damages and other relief.

**<u>SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS</u>**
*<u>Failure to Furnish Proper Wage Statements in Violation of the NYLL and the NYCRR</u>*

149.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

150.    Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are "employees" within the meaning of the NYLL and the NYCRR.

151.    N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

152.    As described above, Defendants, on each payday, failed to furnish Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action, with accurate wage statements containing the criteria required under the NYLL, specifically, NYLL § 195(1), *et seq*., and 12 NYCRR § 142-2.7, *et seq*.

153.    Specifically, Defendants failed to furnish Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action with accurate wage statements on a weekly basis, and

that if/when Defendants did furnish a wage statements, it failed to include, *inter alia*, their actual regular and overtime hours worked, corresponding regular and overtime rates of pay, or a correct pay period.

154.    Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt in to this action in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00, per Plaintiff.

## EIGHTH CLAIM FOR RELIEF AGAINST RESPONDENTS
*Failure to Furnish Proper Wage Notice in Violation of the NYLL and the NYCRR*

155.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

156.    Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are "employees" within the meaning of the NYLL and the NYCRR.

157.    NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

158.    As also described above, Defendants failed to furnish Plaintiff with any wage notice at hire, let alone one that accurately contained all of the criteria required under the NYLL.

159.    Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt in to this action in the amount of $50.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00, per Plaintiff.

## DEMAND FOR A JURY TRIAL

160.    Pursuant to FRCP 38(b), Plaintiffs, Rule 23 Plaintiffs, and FLSA Plaintiffs demand a trial by jury in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs demand judgment against Defendants as follows:

a.      A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b.      Preliminary and permanent injunctions against Defendants, and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.      An order restraining Defendants from any retaliation against Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs for participation in any form in this litigation;

d.      Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.      Designation of this action as a Fed.R.Civ.P. 23(b)(3) class action on behalf of Plaintiff and Rule 23 Plaintiffs, and prompt issuance of notice pursuant to Fed.R.Civ.P. 23(c)(2) to the Rule 23 Plaintiffs, apprising them of the pendency of this action, and tolling of the statute of limitations;

f.      Designation of Plaintiff and undersigned counsel as class and collective action representatives under the FRCP and FLSA;

g.      All damages that Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs have sustained

as a result of the Defendants' conduct, including all unpaid wages and any shortfall between wages paid and those due under the law that Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs would have received but for Defendants' unlawful payment practices;

      h.     Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

      i.     Awarding Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs, their costs and disbursements incurred in connection with this action, as well as their reasonable attorneys' fees, expert witness fees and other costs;

      j.     Awarding Plaintiff with a service award for his role as class and collective action representative and in recognition for his dedication to the Rule 23 Class and FLSA Plaintiffs and his willingness to come forward as the lead Plaintiff on behalf of the Rule 23 Plaintiffs and FLSA Plaintiffs;

      k.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and economic damages caused by Defendants' unlawful retaliation;

      l.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

      m.     An award of punitive damages;

      n.     Pre-judgment and post-judgment interest, as provided by law; and

o.    Granting Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs such other and further

relief as this Court finds necessary and proper.

Dated: New York, New York
       February 7, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By:    *Avraham Y Scher*
       Jon L. Norinsberg, Esq.
       Michael R. Minkoff, Esq.
       Avraham Y. Scher, Esq.
       110 East 59th Street, Suite 2300
       New York, New York 10022
       Tel.: (212) 227-5700
       *Attorneys for Plaintiff and Putative Class*
       *and Collective*